■ In the Matter of AHARAN BASKIN, Respondent, v ZONING BOARD OF APPEALS OF THE TOWN OF RAMAPO et al., Appellants.—In a proceeding pursuant to CPLR article 78 (1) to review a determination of the appellant Zoning Board of Appeals, rendered August 30, 1973, approving an application for a use variance and (2) to revoke the building permit issued by the appellant building inspector, the appeal is from a judgment of the Supreme Court, Rockland County, dated May 31, 1974, which annulled the said determination and revoked the said building permit. Judgment affirmed, without costs. No opinion. Martuscello, Acting P. J., Latham and Cohalan, JJ., concur; Shapiro, J., dissents and votes to reverse the judgment, dismiss the petition, confirm the determination and reinstate the building permit, with the following memorandum, in which Christ, J., concurs. This court is affirming the judgment of Special Term, which annulled a determination of the respondent Zoning Board of Appeals. That board, after a public hearing, granted a variance to one Martin Landa, permitting him to install a second kitchen in the one-family residence he was constructing for himself and his son and daughter-in-law on a plot he owned, which was located in an area zoned for one-family residences. I believe that the board's action should be sustained and, consequently, I dissent from the determination of this court. At the public hearing held by the Zoning Board of Appeals on Landa's application for a variance, the petitioner respondent appeared in person and by counsel and voiced his objection to the granting of the variance. The Zoning Board of Appeals granted the variance after finding that (1) differences in the degree of religious observance between the applicant and his son and daughter in law required that the applicant have a kitchen separate and apart from that used by his son, (2) the structure being built had a single entrance, a single boiler and only one utility room, (3) the staircase separating the upstairs and downstairs consisted of an open staircase and (4) there was a single entrance to the premises. The board also found that the applicant had consented to a living arrangement with his son and daughter in law in order to permit his son to continue to attend school and had agreed to remove the second kitchen when it was no longer required for his personal use. Thus, the major issue posed by this appeal is whether the fact that a house which is to be occupied by what would clearly qualify as one

family under the zoning ordinance (a father and mother and their son and his wife) becomes a two-family house under that zoning ordinance merely because it contains two kitchens. The majority says it does. I disagree. Although the Justice at Special Term, citing *Matter of Stafford v Incorporated Vil. of Sands Point* (200 Misc 57), set forth as the test of "Whether a dwelling is a one-family or two-family residence * * * the design of the house and a finding that it was to be occupied by the owner and his family", he nowhere dealt with the question of whether the house under examination is "to be occupied by the owner and his family", but predicated his finding on his conclusion that "The house *design* clearly indicates that a two-family house is contemplated" and that "It is clear that there was an attempt here to erect a two-family house in a one-family R-35 zone" (emphasis supplied). But, in *Stafford,* upon which Special Term relied, the court said (pp 59–60): "As might be expected, neither the design of the house nor the nature of its occupancy standing alone controls. The combination of the design of the house *and* the nature of the occupancy is the twofold test. The word 'design' in the definition need not be commented upon. In saying that, I am not unmindful of the fact that respondent leans heavily, I would say entirely, upon design for its objection to petitioner's building. I consider that comment on the word 'family' will more than suffice. Taking respondent's objection at face value, it considers that the design, including two kitchens and other possible uses for rooms labeled in plans to the contrary, together with the presence on the premises of petitioner's mother and sister, render petitioner's dwelling into one being used as a two-family house. * * * The using of a dwelling for living purposes by a son, his family * * * and his mother and sister, in the absence of evidence to the contrary, may not be said to be the setting up of two separate family units who are living not under a single head or management for the purpose of denying a certificate of occupancy in a one-family district". Thus, that case not only does not support Special Term's decision but, rather, requires a ruling against the petitioner respondent here. The occupants of the residential housing which is the subject of the instant appeal are clearly all members of one family. The fact that they will have separate kitchens arising out of the need for the daughter in law to have a kosher kitchen cannot serve to transform what is one family living in one house in shared heating, utility and entrance facilities, and without segregation within the house (witness the open stairway between floors), into a two-family home simply because it could be altered into a two-family home. Zoning ordinances, which are enacted under the police power to protect the public health, welfare and morals, should not be used to bar the owners and legal occupants of a one-family home in a one-family zone from using available space to provide themselves with such luxuries as an additional sitting room, kitchen, bathroom or extra bedroom simply because, in other hands, such facilities could be used for maintenance of a two-family home. It is clear that the existence of a mere opportunity for future evasion or violation of law does not raise a presumption that such violation in fact actually presently exists *(Holt v United States,* 218 US 245, 251). There will be time enough for the petitioner respondent neighbor to take action to end a violation of the zoning ordinance when and *if* it occurs. He should not receive the aid of the court to fend off the mere evanescent possibility of future violation. Insofar as the petitioner is concerned, his contention is that, since the residence in question is so *designed* that it could be transformed into a two-family residence because it has a duplication of kitchen and other facilities, it is in fact a two-family residence, despite the fact that the residence will conced-

edly be occupied by what is clearly one family. Special Term accepted this novel concept in law enforcement and struck down the determination of the Zoning Board of Appeals as "arbitrary, capricious and unreasonable." In my view, Special Term's conclusion was wholly erroneous. First, I do not believe that the zoning ordinance was intended to prevent single families residing in a one-family house from gracing their homes with more than one kitchen, more than one bathroom, additional living rooms and extra bedrooms, if they could afford to do so, or did so, for reasons of religious observance. Zoning ordinances are not enacted to enforce procrustean conformity on a residential area limited to one-family homes by allowing only one kitchen to a house, but rather "to promote the public safety and welfare and to do substantial justice" *(Matter of Kasten v Zoning Bd. of Appeals of Town of Brookhaven,* 47 AD2d 766) by preventing overuse of homes in such areas by avoiding overcrowding. The standard, therefore, is not designed or potential use, but actual use. If, in fact, a large house with additional amenities such as those the owner-builder here sought to include in order to meet the desires and religious needs of his wife, son and daughter in law is to be barred because it might, at some future time, possibly be used by later owners or occupants for a use which violates the existing one-family limitation, the effect would be to visit on the present lawful users and occupiers of the home anticipatory punishment for future wrongdoing by another, a concept contrary to the basic principles of Anglo-Saxon law. A second reason why the conclusion of Special Term and of the majority here should be set aside is that both apparently fail to recognize that they are dealing with an effort to *overturn* a decision of the Zoning Board of Appeals. Here, the attack is on a variance granted by the board in the exercise of its discretion. Finding that, although there were two kitchens and apparently sufficient other dwelling facilities to permit the owner-builder and his wife to have dwelling facilities within the structure separate from those of his son and daughter in law, the Zoning Board of Appeals noted that there is but a single entrance to the building, a single boiler and one utility room for the entire structure, and only an open staircase separating the upstairs and downstairs, negating, in their view, and mine too, the conclusion that the structure is in fact being occupied as a two-family house. Certainly, the existence of these factors justified, if it did not compel, the exercise of discretion by the appellant Zoning Board of Appeals in determining that the use was to be a one-family use and that the need for a variance allowing the use of a second kitchen in the house was supported by a sufficient showing of practical difficulty. To overturn the presumption of regularity which attaches to such a determination by the Zoning Board of Appeals *(Matter of Falvo v Kerner,* 222 App Div 289) it is necessary for the complaining party to negative this presumption *(Matter of Revorg Realty Co. v Walsh,* 225 App Div 774, affd 251 NY 516, mot for lv to rearg den 251 NY 557). The burden of proof rests with the party seeking to overturn a decision of the board (3 Anderson, American Law of Zoning, § 21.16, p 584, 585) and "The courts, since the earliest years of zoning, have recognized that ordinances which create boards of adjustment delegate to such administrative agencies broad discretionary powers". This court has consistently held that, where a decision of a Zoning Board of Appeals on a matter within its jurisdiction is made on a rational basis, the courts may not substitute their judgment for that of the board *(Matter of Kropf v Brooks,* 17 AD2d 829, 830; see, also, *Matter of Davison v Segur,* 24 AD2d 797). Here, Special Term erred when it substituted its judgment for that of the board and reversed the board's action *(Matter of Fort Greene Assoc. v Murdock,* 249 App Div 622, affd 273

NY 506), since "The showing before the board was of a character that afforded a basis for the determination at which it arrived" *(Matter of Streit v Murdock,* 249 App Div 791). The Court of Appeals expressed its views in the same fashion when it said that "It is axiomatic that the court will not substitute its judgment for that of the board or set it aside unless it clearly appears to be arbitrary or contrary to law" *(Matter of Fiore v Zoning Bd. of Appeals of Town of Southeast,* 21 NY2d 393, 396). It is noteworthy, in this connection, that the two decisions cited by Special Term to support its conclusion that the "house design clearly indicates that a two-family house is contemplated" and that "Consequently, the determination of the Zoning Board of Appeals must be found to be arbitrary, capricious and unreasonable" both involved efforts to *reverse* Zoning Board of Appeals' *denials of* applications to install a second kitchen (see *Matter of Williams v Adami,* 70 Misc 2d 702 and *Matter of Owens v Michaelis,* 22 Misc 2d 107). In my opinion, the action of the Zoning Board of Appeals, in granting the variance, was supported by the evidence and was within its discretion; it was not arbitrary, capricious or unreasonable. The judgment appealed from should therefore be reversed, the petition should be dismissed, the board's determination should be confirmed and the building permit should be reinstated.